NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JEWISH LIFELINE NETWORK, INC., | |
| Plaintiff, | Civil Action No. 15-cv-0254 (SRC) |
| v. | OPINION |
| OXFORD HEALTH PLANS (NJ), INC., | |
| Defendant. | |

**CHESLER**, District Judge

This matter comes before the Court upon the motion filed by Defendant Oxford Health Plans (NJ), Inc. ("Defendant") to dismiss counts one through four of the Complaint. Plaintiff Jewish Lifeline Network, Inc. ("Plaintiff") opposes the motion. The Court has considered the parties' submissions and proceeds to rule without oral argument. For the reasons set forth below, the Court will deny Defendant's motion.

**I.  BACKGROUND**

**A. Factual History**

In this case, a health care service provider seeks to recover from an insurance company the cost of an ambulatory air-evacuation that it arranged. The Court gathers the following facts from Plaintiff's Complaint and assumes them to be true for purposes of this motion only.

Plaintiff Jewish Lifeline Network Inc., which does business as Vital One ("Plaintiff" or "Vital One") provides medical transportation services. Specifically, it arranges air ambulances for patients who require emergency transportation. On occasion, Vital One will fall outside the

1

network of a given patient's insurance company.  In those instances, before evacuation occurs, Vital One uses a third-party billing service, Air Ambulance Billing, LLC ("Air Ambulance Billing"), to contact the patient's health insurance provider and confirm the patient's coverage.  Because evacuation must happen quickly, specific negotiations about how much the service will cost are sometimes conducted after the service is rendered.   An agreement as to the cost and terms of a particular service is referred to as a Single Case Agreement ("SCA").

   Eric Cohen is an individual employed by Link Media Group, LLC ("LMG").  Mr. Cohen and his family were insured through an Oxford Group health plan that LMG had purchased ("the LMG Plan").  On September 4, 2013, while Mr. and Mrs. Cohen were traveling abroad in Tel-Aviv, Israel, Mrs. Cohen gave birth to a premature girl with a serious liver condition ("Baby Caroline").  An Israeli doctor soon advised the Cohens that Baby Caroline should be treated at the Boston Children's Hospital in Massachusetts.

   To arrange Baby Caroline's evacuation, Mr. Cohen contacted Vital One.  Between October 3 and October 24, 2013, Vital One and Air Ambulance Billing frequently communicated with representatives from Oxford and the LMG Plan Administrator, United Health Care ("United").  United confirmed that the Cohens' policy with the LMG Plan covered Baby Caroline, and it provided pre-authorization for the evacuation.  Vital One leased an aircraft with medical equipment and it hired ground ambulances in Tel-Aviv and Boston.  On October 24, 2013, the Cohens were evacuated by air from Tel-Aviv to the Boston Children's Hospital.

   After the evacuation, Vital One and Air Ambulance Billing sought to have Oxford enter into an SCA.  Vital One claimed $971,800 for the services rendered to the Cohens.  On behalf of Oxford, United responded that it would pay only $97,500, or approximately 10% of Plaintiff's claim.  In April of 2014, United sent LMG a "Notice of Retroactive Cancellation," which stated

2

that based on material representations, it would retroactively cancel LMG's coverage. In September of 2014, Oxford relayed that it would not cover Vital One's claim for the Cohens.

### B. Procedural History

Plaintiff Jewish Lifeline Network, Inc. ("Plaintiff") filed a Complaint against Defendant Oxford Health Plans (NJ), Inc. ("Defendant") in this Court on January 13, 2015. In the Complaint, Plaintiff pleads the following counts against Defendant: (1) breach of contract; (2) promissory estoppel; (3) quantum meruit; (4) unjust enrichment; and (5) negligent misrepresentation. This Court has subject matter jurisdiction over the action pursuant to diversity between the parties.

On March 12, 2015, Defendant moved to dismiss counts one through four. In support of its motion, Defendant highlights that the federal Employee Retirement Income Security Act ("ERISA") preempts state-law claims that "relate to" an ERISA plan. Defendant contends that the first four claims in the Complaint "relate to" an ERISA plan, and it argues that the Court should accordingly dismiss them.

Plaintiff opposes the motion. It argues that ERISA does not preempt the state-law claims because rather than challenging any determination of ERISA coverage, the claims arise from independent legal duties based on Defendant's representations. Plaintiff notes that its claims are based upon Defendant's pre-authorizations and promises; not the terms of any insurance plan.

## II. DISCUSSION

### A. Motions to Dismiss

A complaint will survive a motion to dismiss under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (quoting Bell Atlantic v. Twombly, 550 U.S. 554,

3

570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  Following Iqbal and Twombly, the Third Circuit has held that to prevent dismissal of a claim the complaint must show, through the facts alleged, that the plaintiff is entitled to relief.  Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).  In other words, the facts alleged "must be enough to raise a right to relief above the speculative level[.]'"  Eid v. Thompson, 740 F.3d 118, 122 (3d Cir. 2014) (quoting Twombly, 550 U.S. at 555).

While the Court must construe the complaint in the light most favorable to the plaintiff, it need not accept a "legal conclusion couched as factual allegation."  Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007); Fowler, 578 F.3d at 210-11; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice."  Iqbal, 556 U.S. at 678.  In reviewing a motion to dismiss under Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record.  See Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed.1990)).

### B. ERISA Preemption and Plaintiff's Claims

The federal Employee Retirement Income Security Act ("ERISA") seeks to establish "a uniform regulatory regime over employee benefit plans[.]"  Nat'l Sec. Sys. v. Iola, 700 F.3d 65, 82 (3d Cir. 2012) (quoting Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004)).  To that end, it contains "an expansive preemption provision."  Id.  Pursuant to that provision, the enforcement

provisions of ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any [ERISA] employee benefit plan[.]" 29 U.S.C. § 1144(a). On multiple occasions, the United States Supreme Court has "noted the expansive sweep of [ERISA's] pre-emption clause." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987) (noting that in the Court's cases "[t]he phrase 'relate to' was given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.") (internal citations omitted); see also Scheibler v. Highmark Blue Shield, 243 F. App'x 691, 693 (3d Cir. 2007) (quoting same).

As broad as ERISA preemption may be, however, it does not foreclose a plaintiff from pleading a state law claim based on a legal duty that is independent from ERISA or an ERISA-governed plan. Significantly, preemption is mandated if a plaintiff is entitled to recover "<u>only because</u> of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA" exists. Aetna Health, supra, 542 U.S. at 210 (2004) (emphasis added); see also Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 400 (3d Cir. 2004) (quoting same).

Moreover, a state law claim may have an independent legal basis even if an ERISA plan is a factual predicate in the case. See generally New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins., 514 U.S. 645, 656 (1995) (finding "uncritical literalism" unhelpful when interpreting ERISA's "relate to" language, and asserting that neither "infinite relations" nor "infinite connections" can justify preemption). The Third Circuit has found an independent legal duty with respect to claims which factually stemmed from an ERISA plan: "We further conclude that the Hospital's state law claims are predicated on a legal duty that is independent of ERISA. The Hospital's claims, to be sure, are derived from an ERISA plan, and

5

exist 'only because' of that plan. [Yet the] crux of the parties' dispute is the meaning of [a Subscriber Agreement.]" Pascack Valley, supra, 388 F.3d at 402 (internal citations omitted). The Court specifically highlighted the absence of any dispute over the terms of the relevant ERISA plan:

> Were coverage and eligibility disputed in this case, interpretation of the Plan might form an 'essential part' of the Hospital's claims. Coverage and eligibility, however, are not in dispute. Instead, the resolution of this lawsuit requires interpretation of the Subscriber Agreement, not the Plan. The Hospital's right to recovery, if it exists, depends entirely on the operation of third-party contracts executed by the Plan that are independent of the Plan itself.
>
> [Id. (internal citations omitted)].

Accordingly, instead of looking to whether an ERISA plan is factually present in an action, courts examine the plaintiff's complaint, the authority provided in support of the pleaded claims, as well as any pertinent plan documents. See Aetna Health, supra, 542 U.S. at 211. The Third Circuit has surmised that it is appropriate for courts to look to whether "the existence of an ERISA plan [is] a critical factor" in the plaintiff's claims, and whether the "the trial court's inquiry would be directed to the plan." 1975 Salaried Ret. Plan for Eligible Employees of Crucible v. Nobers, 968 F.2d 401, 406 (3d Cir. 1992).

Neither the Supreme Court nor the Third Circuit have explicitly addressed circumstances mirroring those presented here. The parties both cite earlier decisions from the District of New Jersey. See MHA, LLC v. Aetna Health, Inc., No. 12-cv-2984, 2013 WL 705612, at *9 (D.N.J. Feb. 25, 2013) (Chesler, J.); Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc., No. 11-cv-2775, 2012 WL 762498, at *1 (D.N.J. Mar. 6, 2012) (Simandle, Chief Judge); McCall v. Metro. Life Ins. Co., 956 F. Supp. 1172 (D.N.J. 1996). While those cases have some factual overlap with the instant matter, they appear to involve an assignment of benefits and claims that derived

from ERISA plans. Here, Plaintiff is a third-party service provider who seeks to recover not as a plan-beneficiary's assignee, but as an independent claimant who allegedly received representations of payment from an insurer.

In that respect, authority from other jurisdictions may be more on point. For example, in <u>Access Mediquip LLC v. UnitedHealthcare Ins.</u>, 662 F.3d 376 (5th Cir. 2011), a provider of medical devices sued an ERISA-plan administrator for reimbursement based on representations of patient coverage that the administrator had allegedly made. The Fifth Circuit Court of Appeals found that ERISA did not preempt the provider's negligent misrepresentation claim. In pertinent part, the Court noted that "fairly construed, [the provider's] claims allege that [the insurer's] agents' statements, though superficially about coverage under the plan, were in their practical context assurances that [the provider] could expect to be paid reasonable charges if it would procure or finance the devices[.]" <u>Id.</u> at 381. To succeed on its claim, the provider

> need not show that [the insurer] breached the duties and standard of conduct for an ERISA plan administrator, because [the provider's] alleged right to reimbursement does not depend on the terms of the ERISA plans. It is immaterial whether the alleged statements regarding the extent that the patients' plans covered [the provider's] services were correct or incorrect as descriptions of the plans' terms.
>
> [<u>Id.</u> at 385].

Observing that the plaintiff's claim would not impact the administration of or obligations under the relevant ERISA plans, the Court further found that the alleged misconduct was "not a domain of behavior that Congress intended to regulate with the passage of ERISA." <u>Id.</u> at 386. The Court then dismissed the plaintiff's quantum meruit and unjust enrichment claims because they did depend on the terms of ERISA plans.

7

Turning directly to the circumstances presented here, this Court finds that ERISA does not preempt Plaintiff's claims.  At the heart of Plaintiff's state-law claims is an allegation that Defendant must pay for the costs of the Cohens' emergency evacuation; not because the LMG Plan or ERISA require Defendant to do so, but because Defendant promised that it would.  Plaintiff alleges that under various theories of state law, Defendant's promises created actionable legal duties which Plaintiff now seeks to enforce.  It cannot be said that Plaintiff's claims exist "only because of the terms of an ERISA-regulated employee benefit plan," or that "no legal duty (state or federal) independent of ERISA" is present.  Aetna Health, supra, 542 U.S. at 210 (2004).  Instead, absent any effort to recover under the terms of the LMG Plan, Plaintiff's claims are legally divorced from the federal statute that governs it.

Defendant urges that Plaintiff's allegations "relate to" an ERISA plan because Plaintiff contacted Defendant in its capacity as an ERISA-plan administrator, and in an effort to confirm coverage under an ERISA plan.  The relevant question, however, is not whether an ERISA plan can be found in the facts giving rise to the case.  See Pascack Valley, supra, 388 F.3d at 402.  Instead, the Court asks whether "the existence of an ERISA plan [is] a critical factor" in the plaintiff's legal claims.  Nobers, supra, 968 F.2d at 406.  The Complaint in this action does not depend upon nor even cite obligations provided for by the LMG Plan.  To resolve Plaintiff's allegations, then, this Court will assess Defendants' alleged pre-authorizations and representations, and the Court's "inquiry [will not] be directed to the [LMG] plan."  Id.; see also Pascack Valley, supra, 388 F.3d at 402 ("[R]esolution of this lawsuit requires interpretation of the [parties'] Agreement, not the Plan.").

Indeed, although Defendant retroactively canceled the LMG Plan, Plaintiff has not staked out any opposition whatsoever to that conduct.  Such ambivalence toward the cancelation of the

8

plan underscores that Plaintiff does not seek to recover benefits under that plan.  Cf. Access Mediquip, supra, 662 F.3d at 385 (highlighting that provider's independent claim would "not affect the on-going administration or obligations of the ERISA plans . . . [nor] expand[] the rights of the patient to receive benefits under the terms of the health care plan.") (internal quotation marks and citations omitted).

In sum, Plaintiff brings this action in its own right, not as the Cohens' assignee, and it seeks to enforce Defendant's alleged representations for reimbursement, not Defendant's benefit obligations under the LMG plan.  Plaintiff's Complaint is devoid of any attempt to derivatively recover under the terms of a now-defunct ERISA plan.  The Court therefore finds that Plaintiff's claims are not preempted under ERISA[1], and it will accordingly deny Defendant's motion.

### III.    CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion.  An appropriate Order will be filed.

                   s/ Stanley R. Chesler
                STANLEY R. CHESLER
                United States District Judge

Dated:  May 18, 2015

---

[1] The Court notes that its decision pertains exclusively to ERISA preemption, and not to the overall sufficiency of Plaintiff's claims.  For example, Plaintiff's theories for quantum meruit and unjust enrichment will require that "the benefit at issue [] have been conferred on . . . the Defendants."  See Broad St. Surgical Ctr., supra, 2012 WL 762498, at *8 (internal citations omitted).  Any such attacks on the legal sufficiency of Plaintiff's claims will remain viable moving forward.